700 F.Supp. 1043 (1988)
NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, MEBA/MNU, AFL-CIO, David Thomas Bottini, Mark Paralitici and Karl Gundmann, Plaintiffs,
v.
James H. BURNLEY, IV, Secretary, U.S. Department of Transportation, and T. Allan McArtor, Administrator, Federal Aviation Administration, Defendants.
Civ. No. C-88-2028 JPV.
United States District Court, N.D. California.
November 17, 1988.
*1044 Duane B. Beeson, Beeson, Tayer & Silbert, Alan Brotsky, San Francisco, Cal., William W. Osborne, Jr., John R. Mooney, Beins, Axelrod & Osborne, P.C., Washington, D.C., for plaintiffs.
John R. Bolton, Asst. Atty. Gen., Robert J. Cynkar, Deputy Asst. Atty. Gen., Mary E. Goetten, Brian G. Kennedy, Atty., Dept. of Justice, Civil Div., Washington, D.C., Joseph P. Russoniello, U.S. Atty., Judith A. Whetstine, Asst. U.S. Atty., Chief, Civil Div., George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendants.

ORDER
VUKASIN, District Judge.
In this action the plaintiff union and three of its members challenge a program for urinalysis drug testing of air traffic controllers where there is reason to believe that the employee contributed to the cause of an accident or incident.[1] The matter came before the Court on defendants' motion to dismiss for lack of venue and on cross-motions for summary judgment on the merits. For the reasons stated in the Court's oral ruling following argument on the motions and more fully stated below, the Government's motion to dismiss and the plaintiffs' motion for summary judgment are denied, and the Government's motion for summary judgment is granted.
Venue. Although this district may not be the only district in which this action could have been brought, it is at least an appropriate district. While the decisions creating the program were made in the District of Columbia, the program itself is nationwide in scope and will affect air traffic controllers and the Department of Transportation's air safety efforts in this district, as well as in every other district in the country. Two of the four plaintiffs reside in this district. The plaintiff union, while headquartered in the District of Columbia, also is active in this district and represents a significant number of employees in this district.
Even if the District of Columbia is viewed as a more logical or more convenient forum, both parties have fully briefed *1045 the merits, and there are no facts in dispute. Thus, a transfer of venue at this time would not serve the convenience of witnesses or be in the interest of judicial economy. Accordingly, under the specific circumstances of this case, therefore, venue is appropriate. See 28 U.S.C. § 1391(e).
Merits-Fourth Amendment. The Fourth Amendment may be implicated where governmental action infringes on "an expectation of privacy that society is prepared to consider reasonable." Railway Labor Executives' Ass'n v. Burnley, 839 F.2d 575, 582 (9th Cir.), cert. granted, ___ U.S. ___, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988) (hereinafter "RLEA"). Urinalysis is a search. Id., 839 F.2d at 579-80. "The fundamental command of the Fourth Amendment is that searches and seizures be reasonable." New Jersey v. T.L.O., 469 U.S. 325, 340, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985); "what is reasonable depends on the context within which a search takes place," id. 337, 105 S.Ct. at 740; accord, e.g., RLEA, 839 F.2d at 582. Attention to context is particularly crucial where the government is acting in its capacity as employer, for "[g]iven the great variety of work environments in the public sector, the question of whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." O'Connor v. Ortega, 480 U.S. 709, 107 S.Ct. 1492, 1498, 94 L.Ed.2d 714 (1987).
Accordingly, while the Court of Appeals in RLEA, supra, has addressed the legality of post-accident urinalysis in one context  in which, notably, the government was regulator, rather than, as here, employer  that does not relieve this Court of the responsibility for analyzing this program in its own context. As another judge in this Court (Weigel, J.) has previously recognized, even in the wake of RLEA, "[t]here are cases in which compulsory drug testing may be justified in the interest of public safety." AFGE v. Meese, 688 F.Supp. 547, 548 (N.D.Calif.1988) This is such a case. Indeed, it is difficult to think of a circumstance in which the interest of public safety is stronger than that of ensuring the safe performance of air traffic control.
Under RLEA,[2] the reasonableness of a particular program is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. 839 F.2d at 586; accord, e.g., United States v. Montoya de Hernandez, 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985).
Here, on the first side of that balance, any intrusion into reasonable expections of privacy is, at most, minimal. First, the fact of drug use, on or off the job, has never been a private matter for those who have chosen the profession of air traffic controller. For many years controllers have been forbidden to use illegal drugs, and have been required to inform their supervisors even when they are taking certain legal medications that might affect their performance. See Declarations of Joyce A. Sexton and Jon L. Jordan. Second, the expectation of privacy regarding urine samples is reduced in this employment context, since air traffic controllers have for many years been subject to routine periodic physicals, including urinalysis for diabetes (and, beginning in 1987, for drug use). Declaration of Jon L. Jordon ¶¶ 7-10. Cf. United States v. City and County of San Francisco, 699 F.Supp. 762 (N.D.Cal.1987) (firefighter applicants' expectations of privacy regarding drug urinalysis reduced where applicants consented to thorough ongoing medical review in course of application process). Finally, any intrusion is also reduced by the provisions of the DOT Order calling for unobserved collection of samples in most instances, see AFGE v. Dole, 670 F.Supp. at 448, and the protection of test results from unwarranted disclosure *1046 through the Privacy Act and section 503 of the Supplemental Appropriations Act, 1987, 101 Stat. 468.
Balanced against the minimal intrusion is a compelling governmental interest in promoting air safety. Because, "[f]ew, if any, positions demand more alertness of mind and soundness of judgment" than that of air traffic controller, "any connection with illegal mind-altering substances is anathema to proper control over air traffic." Borsari v. FAA, 699 F.2d 106, 110-11 (2d Cir.). cert. denied, 464 U.S. 833, 104 S.Ct. 115, 78 L.Ed.2d 115 (1983).
Unfortunately, but perhaps understandably given the considerable stresses of the profession, DOT experience shows that nearly 100 controllers have entered rehabilitation programs in 1986 and 1987 alone. Declaration of Melissa Allen ¶ 9.[3] Plaintiffs stress that, as a percentage of all controllers, the number of controllers who have entered rehabilitation programs or have tested positive in random or annual-physical drug tests, is small, .7% of those randomly tested, for example. But whether expressed as absolute numbers or as a percentage, given the magnitude of what is at stake, "the F.A.A.'s concerns regarding use [of drugs] by its own employees are reasonable." Nat'l Ass'n of Air Traffic Specialists v. Dole, 2 Ind.Emp.Rts.Cases (BNA) 68, 84 (D.Alaska 1987). The achievement of the Federal Aviation Administration (and of the large majority of controllers) of a largely drug-free workplace is admirable, but cannot justify complacency in a context where the goal should be for all, not just almost all, controllers to be drug-free.
NATCA also relies on a 1984 DOT report noting that no accidents or incidents were known to have been caused by controller drug usage. NATCA's argument that the FAA cannot test for whether air controller drug usage has contributed to accidents until it already knows that controller drug usage has contributed to accidents is an illogical absurdity. In the face of concrete evidence that some controllers do indeed use drugs and continue to do so in spite of the implementation of random testing, the argument does not comport with the Fourth Amendment's command of reasonableness. See Rushton v. Nebraska Public Power Dist., 844 F.2d 562, 565 (8th Cir.1988).
Drug testing, as conducted by defendants, appears to be an effective tool for reducing employee drug use. Plaintiffs themselves note that the 1984 Report showed relatively few drug related incidents in the Federal Aviation Administration ("FAA"). Exhibit 6 to Complaint. But DOT's Inspector General noted in that report, which predated the FAA's drug testing programs, that "the FAA has more employees with drug and alcohol problems than are known to management." Indeed, the record here demonstrates more generally that it is very difficult for any employer, even with supervisors trained in identifying drug-related problems, to detect drug problems without a comprehensive drug testing program. Declaration of Doctor Robert L. DuPont, Jr. ¶¶ 3-8. Indeed, the drug testing that the DOT has conducted subsequent to the 1984 Report has been instrumental in alerting the employer to drug problems in the work force. In only its first 16 months of operation, testing in conjunction with annual physicals identified 31 drug problems (even with controllers choosing the dates of testing), and random testing in its first nine months resulted in the identification of sixteen additional controllers using illegal drugs. Allen Declaration ¶ 9.
Other aspects of DOT's drug testing plan further underscore its reasonableness. Heeding the lessons of "[t]he literature on drug testing [which] is replete with references to the unreliability of results," *1047 RLEA, 839 F.2d 589, the federal government has taken steps to assure accuracy by promulgating mandatory guidelines for federal workplace drug testing programs. 53 Fed.Reg. 11970 (April 11, 1988). Not only do these guidelines require an initial immunoassay test which can now approach 99% accuracy levels, see Lahey v. Kelly, 71 N.Y.2d 135, 518 N.E.2d 924, 524 N.Y.S.2d 30 (1987); Peranzo v. Coughlin, 850 F.2d 125 (2d Cir.1988) (immunoassay test confirmed by second immunoassay test "at least" 98% accurate), but the guidelines also require a confirming test using the state-of-the art GC/MS test that is "virtually 100% accurate," Lovvorn v. City of Chattanooga, 846 F.2d 1539, 1541 (6th Cir. 1988), panel opinion vacated and petition for rehearing en banc granted, 861 F.2d 1388 (6th Cir.1988).
As plaintiffs argue, even state-of-the-art tests measure that illegal drugs have been used rather than whether an employee is impaired on duty or at the time of the urinalysis test. The limitations of current tests are not reasons why what is now available to the FAA should not be used. The testing will achieve the stated and crucial goal of the program, the identification and rehabilitation of illegal drug users in critical safety positions so as to prevent future impairment and the catastrophe impaired performance of air traffic control duties invites. The achievement of this goal is not at all dependent on measuring past impairment at a single instant. Moreover, the FAA should continue to take every permissible step to ascertain factors (drug-related or otherwise) involved in accidents or mishaps to assure that the problems that may have contributed to an accident are corrected and future accidents avoided.
A further factor supporting the reasonableness of the testing program is that the Department of Transportation testing plan focusses on rehabilitation rather than punishment for the first-time, off-duty drug user. Plaintiffs' Exhibit 1, ch. IV. See AFGE v. Dole, supra, 670 F.Supp. at 447.
Accordingly, this Court, like the two other district courts that have considered drug testing of FAA air traffic personnel,[4] concludes that whatever minimal intrusion into the controllers' reasonable expectations of privacy the testing may involve is more than outweighed by the FAA's interest in furthering air safety, and that the testing is therefore not an unreasonable search or seizure within the meaning of the Fourth Amendment.
Merits  Consistency of Order with Guide. In addition to challenging the constitutionality of the DOT Order providing for post-accident drug testing, plaintiffs also allege that the "Drug Testing Guide" issued by DOT to explain and implement the post-accident drug testing is invalid because it is inconsistent with the DOT Order. The DOT Order provides for post-accident testing "where there is reason to believe that the employee contributed to the cause of the accident." DOT Order 3910.1 at III-3. The Guide sets forth a detailed three-step procedure for making that determination, the third step of which excludes from testing those employees whose work performance "could not have been a contributing factor in the event." Plaintiffs contend that this Step contravenes the language in the DOT Order.
Plaintiffs' claim is without merit. Not only is there little, if any, variance, in the provisions themselves  particularly when the three-step process is considered as a whole  but the Guide in this same section also repeats the Order's standard virtually verbatim: "Only employees whose job performance at or about the time of the event provides reason to believe that said performance may have contributed to the accident shall be determined to be subject to drug testing." Guide at VI-5 (emphasis supplied). Moreover, an agency interpretation of its own order is of controlling *1048 weight unless it is plainly erroneous, Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801-02, 13 L.Ed.2d 616 (1965). The DOT interpretation of its own order set forth in the Guide is at least one reasonable way of interpreting the Order, and is not plainly erroneous. The Guide is therefore not invalid on its face.[5]

CONCLUSION
For the reasons stated from the bench and in this order, defendants' motion to dismiss is denied, plaintiffs' motion for summary judgment is denied, and defendants' motion for summary judgment is granted. The clerk shall enter judgment for defendants.
NOTES
[1] The program is set forth in Department of Transportation ("DOT") Order Number 3910.1 ("the DOT Order"). DOT also conducts urinalysis testing of controllers as part of their annual physicals, prior to their appointment, on the basis of reasonable suspicion of drug use, and at random. The annual-physical drug testing was upheld in Nat'l Ass'n of Air Traffic Specialists v. Dole, 2 Ind.Emp.Rts.Cases (BNA) 68 (D.Alaska 1987) (denying preliminary injunction), and the random testing was upheld in AFGE v. Dole, 670 F.Supp. 445 (D.D.C.1987) (appeal pending). Plaintiffs challenge only the post-accident drug testing in this action.
[2] While, as expressed in the bench comments, and in this order, the testing here can be distinguished from the testing program in RLEA, the Court recognizes that the precedential guide-posts in this developing area of the law are not always clear. Accordingly, as also noted in the bench comments, to the extent that testing of air traffic controllers may be deemed inconsistent with the decision in RLEA, the Court would respectfully suggest reconsideration of that decision.
[3] Moreover, the Court may take judicial notice of the fact that use and abuse of drugs is a very serious problem in our society, and that controllers, as members of society, are not immune from that drug scourge. That fact alone would be more than sufficient reason to guard against a drug problem among controllers, Nat'l Ass'n of Air Traffic Specialists v. Dole, 2 Ind.Emp.Rts. Cases (BNA) 68, 84 (D.Alaska 1987), even if DOT's experience did not confirm that a drug problem exists.
[4] AFGE v. Dole, 670 F.Supp. 445 (D.D.C.1987) (appeal pending); Nat'l Ass'n of Air Traffic Specialists v. Dole, 2 Ind.Emp.Rts.Cases (BNA) 68 (D.Alaska 1987); but cf. NFFE v. Carlucci, 680 F.Supp. 416 (D.D.C.1988) (preliminary injunction against drug testing of civilian employees of Army, including air traffic controllers), stayed pending appeal, No. 88-5080 (D.C.Cir. March 30, 1988).
[5] Of course, this ruling does not foreclose a particular controller from contesting the application of the Guide or DOT Order to particular facts by arguing whether, on those facts, there was reason to believe that the employee contributed to the cause of the accident or incident. Cf. AFGE v. Dole, 670 F.Supp. at 449.