983 F.2d 1088
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Gerald B. WATSON, Jr., Petitioner,
v.
DEPARTMENT OF TRANSPORTATION, Respondent.
 No. 91-3558.
 United States Court of Appeals, Federal Circuit.
 Nov. 18, 1992.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined Dec. 28, 1992.
 
 Before RICH, PAULINE NEWMAN and MICHEL, Cirucit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Gerald B. Watson, Jr. (Watson) petitions for review of the July 25, 1991 final decision of the Merit System Protection Board (Board or full Board) in Docket No. SE07528910074, sustaining the Department of Transportation's (DOT's or agency's) removal of Watson for refusing to submit to random drug testing in accordance with Executive Order 12564, DOT Order 3910.1, and Federal Aviation Administration (FAA) Order 3910.6. We affirm.
 
 DISCUSSION
 
 2
 The full Board found the penalty of removal to be warranted, and thus reversed the Administrative Judge's (AJ's) mitigation of the removal to a suspension. The Board further found that "[t]he record does not support the administrative judge's finding that the agency had predetermined the penalty."
 
 
 3
 Watson's primary argument before this court is that the Board erred in not deferring to the AJ's determination that Donald Coones, the agency's deciding official, was not credible on the predetermination issue. Specifically, the AJ found unconvincing Coones' testimony that, although he felt constrained "to some point" by the removal requirement of the agency's drug testing program, he still had discretion to select a lesser penalty. Coones left the AJ "with the clear impression that he had merely gone through the motions of decision-making."
 
 
 4
 Absent issues of witness credibility and demeanor, the full Board owes no special deference to fact findings of the AJ; the Board may reject the AJ's findings and substitute its own. Jackson v. Veterans Admin., 768 F.2d 1325, 1330-31 (Fed.Cir.1985). However, "[o]n appeal to this court, when a finding by the presiding official of this nature [respecting credibility] has been reversed by the board, we cannot sustain the board's decision unless the board has articulated a sound reason, based on the record, for its contrary evaluation of the testimonial evidence." Id. at 1331. We hold that in the instant case, the Board has articulated such reasoning. The Board correctly explained that, contrary to the negative inference drawn by the AJ, the fact that Coones could list only two specific circumstances under which he would consider mitigating the removal did not mean that he had failed to consider all relevant mitigating factors, and that he had not exercised his managerial discretion to assign a penalty within tolerable limits of reasonableness. In addition, the Board properly relied upon the affidavit of agency official Melissa Allen, who stated that the initiation of a removal action (the agency's policy with respect to employees in safety- or security- sensitive positions who refuse to submit to random drug testing) is not equivalent to mandating removal. The Board noted Ms. Allen's knowledge of at least two agency employees who, after receiving notices of proposed removal for refusal to submit to random drug testing, ultimately received lesser penalties.
 
 
 5
 Regardless of whether the Board's final decision differs from the AJ's initial decision, this court evaluates the Board's final decision under the substantial evidence standard. Jackson, 768 F.2d at 1330. Here, the full Board examined all the evidence and concluded that the factors supporting mitigation were simply outweighed by those supporting removal. See Baker v. Department of Health and Human Serv., 912 F.2d 1448, 1456 (Fed.Cir.1990). The Board found, inter alia, that Watson's position as an electronics technician for the FAA involved "serious safety responsibilities," that Watson's refusal to follow his supervisor's order to submit to drug testing in accordance with the agency's program adversely affected the efficiency of the service, i.e., that there was "nexus," and that Watson lacked a good potential for rehabilitation. Substantial evidence in the record supports each of the Board's findings. Accordingly, we may not disturb the Board's decision sustaining Watson's removal. 5 USC 7703(c).
 
 The Dissent
 
 6
 The dissent would reverse the full Board's decision on the basis of Watson's reliance upon the majority opinion in Railway Labor Executives' Ass'n v. Burnley, 839 F.2d 575 (9th Cir.1988) (RLEA I). According to the dissent, RLEA I declared suspicionless drug testing by government action to be illegal wherefore that became the law in the Ninth Circuit, and was controlling at the time of Watson's refusal to be tested because all events occurred in the Ninth Circuit. The dissent reasons that removal from federal service should not be based upon an employee's refusal to comply with an unconstitutional order. Though this issue was not briefed by either party, we feel it necessary to respond.
 
 
 7
 We agree that as a matter of public policy, individuals should be able to act in accordance with what the law is at a particular time and place. However, the state of the law of suspicionless drug testing of government employees at the time of Watson's refusal was plainly unsettled, even in the Ninth Circuit. We accordingly view the asserted reliance of Watson and his attorney on RLEA I as unjustified and unreasonable, for at least the following reasons. First, we find it significant that Watson's refusal to undergo drug testing occurred on August 18, 1988, some two months after the Supreme Court granted certiorari in RLEA I on June 6, 1988. Burnley v. Railway Labor Executives' Ass'n, 486 U.S. 1042 (1988) (No. 87-1555). One swallow does not make a summer and one court's opinion, accepted for review by the Supreme Court, has not settled anything even in one limited geographic area. In addition, we disagree with the dissent's characterization of the drug testing procedure at issue in Watson's case as having "already been held unconstitutional." It should be noted that the regulations construed in RLEA I, which mandated post-accident drug testing for all involved railroad employees, are not identical either in form or applicability to the FAA regulations applied here, albeit both programs permit testing without particularized suspicion. See RLEA I, 839 F.2d at 577-78 nn. 3-4 (text of Federal Railroad Administration regulations); see also Railway Labor Executives' Ass'n v. Skinner, 934 F.2d 1096, 1098 (9th Cir.1991) (noting that in reversing RLEA I, the Supreme Court "did not address the constitutionality of random drug testing ..."); National Air Traffic Controllers Ass'n v. Burnley, 700 F.Supp. 1043, 1045 (N.D.Cal.1988) (noting that in RLEA I, "notably, the government was regulator, rather than, as here, employer....")
 
 
 8
 The dissent criticizes the Board's reliance upon Gragg v. United States Air Force, 13 MSPR 296 (1982), which in turn relied upon Walker v. City of Birmingham, 388 U.S. 307 (1967), because neither of these decisions addressed an individual's obligation to comply with procedures already held unconstitutional. Contrary to the dissent's view, we believe Gragg and Walker support the proposition that, absent circumstances where compliance would involve clear physical danger, regulations and laws must be obeyed, even if unconstitutional, unless obedience would prevent a subsequent legal challenge. It is clear that submission by Watson to drug testing would not have mooted a later legal challenge to the testing program. In our view, the dissent advocates a new exception to the well-established "obey then grieve" rule for federal employees. At the most fundamental level, the dissent would apparently hold that rules about compliance are different categorically where constitutional rights are involved. This is judicial creation of new law in which we cannot join.
 
 PAULINE NEWMAN, Circuit Judge, dissenting
 
 9
 I respectfully dissent, for when I review what happened to Mr. Watson it is clear that the Board has erred. An important question is presented in this case, concerning the relationship of federal employer and employee.
 
 
 10
 In brief: On August 18, 1988 Mr. Watson's supervisor at the Federal Aviation Administration's field office in Eugene, Oregon told him that he would be given a random drug test that afternoon. The previous February the Ninth Circuit Court of Appeals had held, in Railway Labor Executives' Ass'n v. Burnley, 839 F.2d 575 (9th Cir.1988) (RLEA I), that suspicionless drug testing by government action violates Fourth Amendment rights. Mr. Watson lives and works in the Ninth Circuit. Mr. Watson consulted a lawyer, who advised him that "the test was unlawful under the Fourth Amendment and that he could refuse to take it," quoting the findings of the administrative judge. Mr. Watson's lawyer then spoke with the supervisor and informed him that random drug testing had been held unconstitutional by the highest federal court in the circuit, and that Mr. Watson would not submit to the test.
 
 
 11
 The testing proceeded that day as announced, and Mr. Watson refused to take the test. However, on the advice of his lawyer, that same afternoon he went to a private testing laboratory, which conducted a drug test. He was found to be drug free, and submitted the results to the agency. The agency does not question the accuracy of this test, and indeed had told Mr. Watson that he was not suspected of illicit drug use.
 
 
 12
 On August 23, 1988 Mr. Watson filed a civil action in federal district court, challenging the constitutionality of the random testing program. That suit was dismissed for lack of subject matter jurisdiction, the court holding that "the Civil Service Reform Act provides the exclusive forum" for Mr. Watson's challenge. Watson v. United States, No. 88-6363-E, slip op. at 6 (D.Or. Oct. 25, 1988). Meanwhile, on August 31, 1988, Mr. Watson received a notice of proposed removal for failure to comply with the random testing program. He was duly and promptly removed.
 
 
 13
 Mr. Watson appealed to the Board. At the hearing there was testimony before the administrative judge about why Watson refused to submit to testing; about why Watson decided to have a drug test, albeit privately; about Watson's eleven years of "fully successful" performance; and about the deciding official's choice of penalty. After the hearing, but one month before the administrative judge's decision, the Ninth Circuit decision in RLEA I was overruled by the Supreme Court in Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602 (1989) (RLEA II), the Court holding that Fourth Amendment rights were outweighed in that case by a reasonable and compelling government interest in safety. The administrative judge reduced Mr. Watson's penalty to a 45-day suspension, stating that he did not credit the deciding official's testimony that he considered penalties other than removal, and finding that various factors, including Mr. Watson's reliance on Ninth Circuit law and the advice of his attorney, weighed against removal. The administrative judge held that the agency could require Mr. Watson to submit to drug testing as a condition of reinstatement.
 
 
 14
 The agency appealed to the full Board. The Board overruled the administrative judge, and reinstated the agency's removal of Mr. Watson. The Board held that Mr. Watson was required to comply with the agency's order regardless of its legality.
 
 
 15
 The Board also held that in any event the agency's testing program did not violate the Constitution, citing Shelledy v. Dep't of Transp., No. DE07528810381 (MSPB June 21, 1991) and American Federation of Gov't Employees v. Skinner, 885 F.2d 884 (D.C.Cir.1989) as authority. Both of these cases were decided after the Supreme Court in RLEA II overruled the Ninth Circuit decision in RLEA I. The Board did not mention either of the RLEA decisions.
 
 
 16
 Neither the Board in its opinion, nor the agency's brief, touches the question of the correctness of requiring Mr. Watson to comply with a governmental order that was unconstitutional and illegal at the time. Instead, the government relies on Gragg v. U.S. Air Force, 13 M.S.P.R. 296 (1982), appeal dismissed sub nom Gragg v. United States, 717 F.2d 1343 (Fed.Cir.1983) for the proposition that Mr. Watson was required to obey a supervisory order and, if he wished to challenge it, to do so after he complied with it. All of the governmental submissions in this court have avoided[1] the sensitive question of requiring compliance with an illegal order when constitutional rights are involved.
 
 
 17
 Is the official position of our government, as an employer, that a federal employee's obligation is to comply with an unconstitutional order, on pain of being fired? We have been directed to no authority for this proposition. Gragg, a 1982 Board decision, did not involve a constitutional ruling of a court; it involved the agency's demand that an employee shave his beard, such demand being contrary to the employees' bargaining agreement. The decision in Gragg interprets Walker v. City of Birmingham, 388 U.S. 307 (1967) as standing for the proposition that "individuals do not have the unfettered right to disregard a law, rule or regulation merely because substantial reason exists regarding the constitutionality or validity of that law, rule or regulation." Gragg, 13 M.S.P.R. at 299. Walker held that a court-issued injunction must be respected. Indeed, Walker provides solid support for Watson's actions. Both Watson and the agency were obliged to respect a duly issued ruling of the Ninth Circuit.
 
 
 18
 The majority of this panel states that Walker supports the proposition that even an unconstitutional administrative regulation must be obeyed. I can not agree. The Court in Walker addressed a situation where petitioners, charged with contempt of a state court injunction, sought collaterally to attack the constitutionality of the injunction as well as the city ordinance on which it relied. These arguments were held to be unavailable to the petitioners because they had not sought orderly judicial review before violating the injunction. The Walker majority stated that "[t]his case would arise in quite a different constitutional posture if the petitioners, before disobeying the injunction, had challenged it in the Alabama courts." Walker 388 U.S. at 318.
 
 
 19
 Walker thus addressed the duty to obey a duly issued court order, not a duty to obey a facially illegal agency order. Further, Mr. Watson had promptly sought orderly judicial review. Gragg's interpretation of Walker as requiring an employee to shave his beard before filing a grievance is quite different from requiring an employee to acquiesce in a then-unconstitutional search. A federal agency does not have authority to issue an illegal order, and severe punishment for non-compliance with an illegal order is unwarranted. Estep v. United States, 327 U.S. 114, 126 (1946) (Murphy, J., concurring). There is no "well-established" rule that federal employees must yield their Constitutional rights when ordered to do so. The "obey now grieve later" rule of Gragg may have a place in disputes arising under a collective bargaining agreement, but Mr. Watson's cause arises under the Constitution.
 
 
 20
 Even in disputes arising under a collective bargaining agreement, the "obey now grieve later" rule has been rejected when an employer's order is illegal: "Apparently the Board believes that an employee given an unlawful order is ... obliged to 'obey and grieve.' We prefer the alternative view that a citizen's first obligation is to obey the law, not the unlawful commands of an employer." Garcia v. N.L.R.B., 785 F.2d 807, 812 (9th Cir.1986). The majority of this panel too readily finds the "obey and grieve" rule proper under these circumstances.
 
 
 21
 The question before us is the punishment of Mr. Watson for having relied on the Ninth Circuit decision holding the suspicionless drug-testing program illegal. The panel majority suggests that Mr. Watson could not have reasonably relied on RLEA I because the drug-testing program in RLEA I was not identical to the program affecting Mr. Watson. Indeed, RLEA I involved drug testing only after a "triggering event" such as a railroad accident, whereas the program affecting Mr. Watson required no "triggering event" at all. If a program of suspicionless drug testing after a railroad accident was unconstitutional, then surely a program of suspicionless drug testing with no triggering event was even less supportable.
 
 
 22
 Until RLEA I was overturned by the Supreme Court, Watson was entitled to rely on it. The grant of a petition for certiorari does not automatically vacate the prior law, or require those subject to that law to behave as if it had already been reversed. "Unless and until ... reversed or modified" on appeal, even an erroneous decision is "an affective and conclusive adjudication", Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923).
 
 
 23
 When the law is changed, even retroactively, equity may require adjustment of the remedy when a person has relied on the existing law. See James B. Beam Distilling Co. v. Georgia, 111 S.Ct. 2439, 2443 (1991) (Souter, J.). The administrative judge neither exonerated Mr. Watson entirely, nor ratified the penalty of firing a fully successful employee of eleven years. The Board, however, fired Mr. Watson. It is a travesty of the rule of law to impose this extreme punishment for refusing to comply with an order, the constitutionality of which had been litigated and found wanting at the time the order was issued. It is the Constitution that is the highest law, not an administrative order.[2]
 
 
 24
 MICHEL, Circuit Judge, concurring, with additional views.
 
 
 25
 I agree with the result and reasoning of Judge Rich's opinion in which I join, but add the following further reasons why I find the dissent unpersuasive:
 
 
 26
 Although seeking to distinguish Gragg and the other cases relied upon by the Board, the dissent cites no authority specifically supporting much less requiring the new and far-reaching rule the dissent itself advocates. That rule would allow several million federal employees, including those like Watson in "sensitive positions," routinely and with complete impunity to disobey any agency order or regulation the constitutionality of which they doubt or which is sub judice. One can easily imagine the spread of employee noncompliance with agency orders that such a rule would likely spawn. Whatever its merit as social policy for such a broad and consequential rule to be imposed as judge-made law rather than through legislation, only a constitutional mandate declared by the Supreme Court should suffice. The dissent's failure to cite any Supreme Court decision requiring its rule is therefore a critical deficiency. Presumably, the dissent could not find such supporting authority because the uniform practice requiring federal employees, as a condition of employment, to "obey now" and "grieve later," unless personal safety would be jeopardized, does not in fact transgress any constitutional right. Further, as the proponent of a new constitutional rule that would reverse government-wide practice, the dissent bears a heavy burden of persuasion that I think is not met here. That courts are ill-equipped to predict and evaluate the practical consequences of such rules is only another reason to doubt the rule the dissent would impose.
 
 
 27
 Nor do I believe the fundamental principle underlying this practice is limited to alleged breaches of collective bargaining agreements, as the dissent suggests. Indeed, often an employee charges that the disputed order or regulation contravenes both contractual and constitutional rights. Therefore, the so-called "grieve later" rule should be understood broadly to include not only grievances per se but also administrative and judicial challenges to an agency-employer's order.
 
 
 28
 Watson's refusal to take the drug use test clearly was not based on safety considerations; nor does he even assert that it was. Indeed, if anything, it threatened the safety of passengers whose lives could depend on the quality of Watson's work. The only other broad exception recognized by case law is where compliance with a disputed order would preclude subsequent legal challenge. Clearly, that was not the case here, either.
 
 
 29
 In any event, the issue the dissent would deem dispositive was not even presented in this appeal. Although Watson did argue below that the "obey and grieve" rule of Gragg should be set aside, he waived that argument on appeal. Here, Watson did not argue against application of the rule on the issue of liability, either generally or on the unique facts of his case, but only that the Board should have considered as a mitigating factor on penalty his "good faith belief that random drug testing was unconstitutional."
 
 
 30
 Again, however, neither Watson nor the dissent has cited any authority holding that an employee's asserted good faith belief in the unconstitutionality of an agency's order must always be considered as a mitigating factor by the agency when it selects the penalty for disobeying that order. If we were now categorically to impose this requirement, it should be expected that many personnel actions based on disobedience of an order would degenerate into an extended inquiry into the subjective state of mind of the employee and a speculative, almost metaphysical, debate about the constitutionality of the order, involving premature predictions, often solely by laymen, about future outcomes in pending or expected constitutional test cases. This would hardly improve the efficiency of the service or of MSPB hearings. Nor is it clearly necessary for fairness to employees. None of which is to say, however, there might not be a case someday involving facts that would require that such a belief must be considered in mitigation. But this is not such a case.
 
 
 31
 Even assuming, arguendo, that the Board was required to consider Watson's asserted good faith belief in the unconstitutionality of the FAA's order and that Watson's reliance on RLEA I was justified, neither Watson nor the dissent has shown, based either on factually comparable cases or on the equities of this case, that the Board abused its discretion by not mitigating his penalty. Hence, if error at all, the Board's failure to weigh Watson's belief was at most harmless error.
 
 
 32
 Finally, the dissent goes too far in saying that the FAA order here had effectively been held unconstitutional by the 9th Circuit decision in RLEA I. For one thing, that case invoked only the government's limited powers as a regulator, not its broader powers as an employer. Other distinctions are noted in Judge Rich's opinion. Therefore, despite the view of Watson's attorney, it was not at all clear that when it issued the employer's order in this case it was unconstitutional, as the regulator's order in that case was temporarily held to be.
 
 
 33
 In sum, constitutional challenges should not be interposed on the spot by public employees confronted with agency orders they question and wish to challenge. Instead, such constitutional challenges should be brought by employees in due course after compliance, with only the limited exceptions established in case law.
 
 
 
 [1]
 The majority opinion states that the issue of the propriety of removal based on a refusal to obey an unconstitutional order was not briefed by either party. That is inaccurate. Mr. Watson's brief discusses his "good faith objection to the constitutionality of random testing" based on his reliance on RLEA I and on his attorney's advice based on this decision. The government's brief, however, is indeed silent on this issue. Despite Watson's clearly stated argument based on his reliance on the law of the Ninth Circuit, the government avoids all reference to RLEA I. Such an omission can only have been deliberate; and indeed, the position that Watson could not rely on the law of the Ninth Circuit is not easily supportable
 
 
 [2]
 The concurring opinion states that I "advocate" that "several million federal employees ... routinely and with complete impunity disobey any agency order or regulation the constitutionality of which they doubt or which is sub judice", while engaging in "speculative" or "metaphysical debate". (Emphasis in concurrence.) That is a curious interpretation of RLEA I, wherein the Ninth Circuit had already declared suspicionless drug testing unconstitutional. That ruling was neither speculative nor metaphysical