**Riley E. JACKSON, Petitioner,**

v.

**VETERANS ADMINISTRATION, Respondent.**

**Appeal No. 84–1566.**

United States Court of Appeals, Federal Circuit.

July 25, 1985.

---

Joseph A. Kiely, Conklin & Adler, Ltd., Denver, Colo., argued for petitioner.

Denise Butler Harty, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With her on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett, Asst. Director and Beacham O. Brooker, Jr.; Douglas D. Doane, Dist. Counsel, Veterans Admin., of counsel.

Before FRIEDMAN, NIES and NEWMAN, Circuit Judges.

NIES, Circuit Judge.

The final decision of the Merit Systems Protection Board (MSPB or board), reported at 21 M.S.P.R. 63 (1984), affirming the removal of petitioner Riley E. Jackson from his position as Animal Caretaker Foreman with the Veterans Administration Medical Center in Denver, Colorado, is affirmed-in-part, reversed-in-part, vacated-in-part and remanded for determination of a lesser penalty.

*Background*

Based on five separate incidents of misconduct, Mr. Jackson was removed from his supervisory position with the Veterans Administration for sexual harassment of a subordinate. Following a hearing before the presiding official designated to hear the appeal, the presiding official reversed Mr. Jackson's removal. The presiding official heard testimony from a number of witnesses relevant to each of five alleged incidents of misconduct, and concluded that none of the incidents was established by the requisite preponderance of the evidence.[1] Upon review at the request of the agency, the board reversed the decision of the presiding official. The board concluded that two incidents (A and D) were supported by a preponderance of the evidence, and that the penalty of removal was not unreasonable based only on those occurrences when Mr. Jackson's past disciplinary record was also considered.[2] Mr. Jackson appealed to this court as provided in 5 U.S.C. § 7703 (1982), invoking our jurisdiction under 28 U.S.C. § 1295(a)(9) (1982).

*Incident A*

One incident found by the board to have been proved is that Mr. Jackson kissed a subordinate employee, Ms. LaSalle, while she was talking on the telephone. At the hearing, Ms. LaSalle testified that, while she was sitting on the floor in a basement hallway talking to her roommate on the telephone, Mr. Jackson walked up and kissed her. Mr. Jackson had never done this to her before, and Ms. LaSalle testified that she had done nothing to encourage him. Ms. LaSalle testified that Mr. Jackson entered the basement hallway through some usually closed double doors, but she did not see or hear him until he bent down to kiss her. She testified that the incident occurred shortly after her roommate moved in at the end of August (1981) and thought the date of the incident was the end of September. Although offended, she did not report the incident to appropriate authorities until more than a year later when she was asked about it by an investigator.

The roommate to whom Ms. LaSalle was speaking at the time of the alleged kiss was Mr. Kester. Mr. Kester testified that, during the subject phone conversation, he heard what he thought was a kiss, and Ms. LaSalle told him Mr. Jackson kissed her. He estimated that the subject phone conversation occurred in about the first week of September; that it might have occurred in the second week; but that it was not in

---

1. Pursuant to 5 U.S.C. § 7701(c)(1)(B) (1982), the board reviews an agency action under Chapter 75 to determine *inter alia* whether it is supported by a preponderance of the evidence.

2. Mr. Jackson's past disciplinary record consisted of two reprimands: (1) for failing to follow instructions, and (2) for negligent workmanship which resulted in falsification of an attendance record.

the third or fourth weeks of that month. He did not hear any door slam during the subject telephone conversation.

Mr. Jackson testified at the hearing, denying that he kissed Ms. LaSalle. He testified that it would have been impossible for him to surprise Ms. LaSalle, as she claims, because the doors through which he would have entered the area make a lot of noise.

Mr. Knopp, an Acting Supervisor, testified that he works in the basement where the alleged kiss occurred. He was familiar with the doors through which one entered the hallway where the phone was located. Mr. Knopp testified to the effect that if one opened a door and let it go, it could be heard from one end of the hallway to the other.

Having considered the testimony pertaining to the kiss, the presiding official concluded:

> In reviewing this entire matter, I find that Ms. LaSalle, was unclear as to when the action took place. I further find that her statement as to the approximate time and the statement by her former roommate were in direct conflict. I find no reason to disbelieve the appellant when he testified that he had not kissed Ms. LaSalle while she was on the phone. Accordingly, I find that the agency has not supported this charge by the preponderance of the evidence.

The board reversed the above finding for the following reason:

> Despite appellant's denial, the record contains the subordinate's testimony and the testimony of the other person on the telephone regarding this incident. Tr. at 76–80. While neither of these witnesses could recall the exact date of the kiss, their testimony is consistent, and corroborates the agency's charge. Thus, the Board finds that this reason is supported by the requisite preponderant evidence.

### Incident D

The second basis for finding sexual harassment by Mr. Jackson involved his repeatedly asking Ms. LaSalle for a kiss in response to her periodic requests to leave a few minutes early on her regular bowling night. In connection with this charge, Ms. LaSalle testified that she went bowling on Tuesday nights during September and October of 1981. On those occasions, a Ms. Herring, another VA Hospital employee, would come to the research building and wait for Ms. LaSalle to get off work. Ms. LaSalle testified that, when she asked for Mr. Jackson's permission to leave early, he would ask for a kiss in return. She testified, however, that she never actually had to give him a kiss in order to leave.

Ms. Herring testified that she did go to the research building on bowling nights to wait for Ms. LaSalle. She testified that they would occasionally ask Mr. Jackson if Ms. LaSalle could leave early. Ms. Herring testified that his response, on a few occasions, was "Sure, if you give me a little kiss." She stated that she and Ms. LaSalle would usually just look at him and laugh. Mr. Jackson denied ever having made such requests.

In regard to this incident, the presiding official made no mention of Ms. Herring's corroborative testimony. Instead, the presiding official analyzed the record as follows:

> In his testimony, appellant was not evasive, nor did he seem insincere. Accordingly, I again find that I have contradictory evidence and I have no reason to disbelieve appellant in his denials. Moreover, Ms. LaSalle testified that it had not been her idea to file charges against the appellant. It had been suggested to her by a third person. In view of the uncertainness of Ms. LaSalle in the exact time of the alleged offenses, Ms. LaSalle's statement that she had not been the person to want to file charges, and appellant's own denials, I find that the agency has not sustained this charge by the preponderance of the evidence. Accordingly, this charge is dismissed.

On review, the board stated that "the testimony of another co-worker [Ms. Herring], who was present, is sufficient to

establish" the alleged misconduct by preponderant evidence.

On appeal to this court, Mr. Jackson argues that the board improperly overturned the presiding official's credibility determinations in making its decision, citing *Penasquitos Village, Inc. v. National Labor Relations Board,* 565 F.2d 1074 (9th Cir. 1977). Apart from the government offering more witnesses, Mr. Jackson argues there is no independent evidence upon which the board could justify its decision.

The agency argues that the board gave the presiding official's findings of fact as much weight as was warranted by the record in this case, and that it acted within its authority in substituting its findings for those of the presiding official. According to the agency, the board left alone the presiding official's findings regarding the three other incidents because they were essentially credibility determinations, turning on the testimony of Mr. Jackson vis-a-vis Ms. LaSalle. In contrast, the agency asserts, the subject incidents were each supported by the testimony of an additional witness. The board's findings sustaining those charges are, per the agency, supported by substantial evidence.

### Issue

Whether the MSPB properly set aside findings of the presiding official?

### Analysis

#### Review of Agency's Evidence to Establish Fact of Misconduct

■ The review by the MSPB of a Chapter 75 action is denominated "an appeal" of agency action. 5 U.S.C. § 7701(a) (1982). However, even though the employee is the initiating party, the agency is required to establish its case to the board by a "preponderance of the evidence." 5 U.S.C. § 7701(c).[3] Under this standard, the "appeal" requires a *de novo* determination of the facts. By seeking "review," an employee puts the agency in the position of a plaintiff bearing the burden of first coming forward with evidence to establish the fact of misconduct, the burden of proof, and the ultimate burden of persuasion, with respect to the basis for the charge or charges. The employee (while denominated appellant) has the advantageous evidentiary position of a defendant with respect to that aspect of the case.

■ The appeal from the final decision of the MSPB to this court is the more typical appellate proceeding. This court reviews factual determinations of the board under the "substantial evidence" standard.[4] 5 U.S.C. § 7703(c). The Supreme Court has defined this standard as follows:

"[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Labor Board,* 305 U.S. 197, 229 [59 S.Ct. 206, 216, 83 L.Ed. 126]. Accordingly, it "must do more than create a suspicion of the existence of the fact to be established.... it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Labor Board v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660].

\* \* \* \* \* \*

---

3. "Preponderance of the evidence" is defined in 5 C.F.R. § 1201.56(c)(2) as:

> *Preponderance of the evidence:* That degree of relevant evidence which a reasonable mind, considering the record as a whole, might accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

4. The statute in 5 U.S.C. § 7703(c) refers ambiguously to this court's review of "agency action" to determine if it is supported by "substantial evidence." In view of the *de novo* nature of the proceeding before the MSPB, this court has concluded that it must review the agency action based on the record made to the MSPB and the MSPB findings, rather than review the agency action solely on the basis of the agency's record. *See Hayes v. Department of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984).

Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitely precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 487–88, 71 S.Ct. 456, 459, 464–65, 95 L.Ed. 456 (1951).

Thus, we must determine whether, considering the record as a whole, the agency's evidence is sufficient to be found by a reasonable fact-finder to meet the evidentiary burden applicable to the particular case.[5]

The above outline of our review function is somewhat over-simplified. The board itself (which is composed of three members) normally does not conduct the evidentiary hearing. Under the statute (5 U.S.C. § 7701(b)), the board is authorized to delegate this part of its responsibility to administrative law judges or other qualified officials who conduct the trial-like proceedings as "presiding officials" and who make an "initial" or recommended decision to the board. This initial decision, however, is not simply a "draft." It is served on the parties and the board and automatically will become the final decision of *the board* unless modified by the board *sua sponte* or pursuant to a petition for review. 5 C.F.R. §§ 1201.113(a) and 1201.114(a). *See Connolly v. Department of Justice*, 766 F.2d 507, 511–512 (Fed.Cir.1985).

In the instant case, the presiding official's initial decision did not become the board's decision. The presiding official found that the agency failed to prove by a preponderance of the evidence any of the incidents on which it relied for taking adverse action against Mr. Jackson. The agency challenged the presiding official's evaluation of the evidence on each of the five incidents, and the board found that the agency's proof was sufficient with respect to two of them. The essence of Mr. Jackson's arguments is that the board improperly substituted its judgment on credibility for that of its delegate who actually heard the evidence.

Given the relationship between the board and the presiding official and the absence of any restriction by statute or regulation, there can be no question but that the board has the *power* to reject a presiding official's decision in a particular case and substitute its own decision, either on the facts or on the law.[6] There is also no question but that the board has the *power* in appropriate cases to substitute its judgment for that of the presiding official with respect to the credibility of witnesses. Finally, that the board's decision differs from the presiding official's does not alter the requirement that we evaluate the *board's final decision* under the substantial evidence standard. *Accord, Ommaya v. National Institute of Health*, 726 F.2d 827, 831 n. 6 (D.C.Cir.1984); *Curran v. Department of the Treasury*, 714 F.2d 913, 915 (9th Cir.1983).

The effect on our review function, where the board and the presiding official disagree on the credibility of witnesses, has not previously been addressed by this court. The analogous situation of a disagreement between the National Labor Re-

**5.** *See SSIH Equipment S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 383, 218 USPQ 678, 693 (Fed.Cir.1983) (Nies, J., additional views); *accord, Whitney v. SEC*, 604 F.2d 676, 681 (D.C. Cir.1979).

**6.** *Connolly v. Department of Justice*, 766 F.2d 507, 512 (Fed.Cir.1985) (MSPB not "guided by customary standards of appellate review"); *accord, Ommaya v. National Institute of Health*, 726 F.2d 827, 831 n. 6 (D.C.Cir.1984); *Curran v. Department of the Treasury*, 714 F.2d 913, 915 (9th Cir.1983); *Williams v. Veterans Administration*, 701 F.2d 764, 765 (8th Cir.1983); *Weaver v. Department of the Army*, 2 MSPB 297, 298, 2 M.S.P.R. 129, 132 (1980), *aff'd* 669 F.2d 613 (9th Cir.1982); *McDonough v. United States Postal Service*, 666 F.2d 647, 648 n. 1 (1st Cir.1981).

lations Board and one of its trial examiners was, however, considered by the Supreme Court in the landmark *Universal Camera* decision, in which the Court stated:

> We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case.

*Universal Camera,* 340 U.S. at 496, 71 S.Ct. at 468.

Interpreting the Supreme Court's directive, Judge Wallace, in writing for a panel of the Ninth Circuit, observed that "evidence in the record which, when taken alone, may amount to 'substantial evidence' and therefore support the Board's decision, will often be insufficient when the trial examiner has, on the basis of the witnesses' demeanor, made credibility determinations contrary to the Board's position." *Penasquitos Village, Inc.,* 565 F.2d at 1078. He concluded that, while credibility determinations are not binding on the NLRB, the "special deference deservedly afforded the administrative law judge's factual determinations based on testimonial inferences will weigh heavily in our review of a contrary finding by the Board." *Id.* at

1079. *See generally* 3 Davis, *Administrative Law Treatise* § 17.16 (2d ed. 1980).

■ The analysis in *Penasquitos Village,* in our view, correctly implements the Supreme Court's instructions in *Universal Camera,* with respect to an appellate court's function in the context of a two-tiered administrative review such as we have, in some instances, in appeals from the MSPB. The MSPB must afford special deference to the presiding official's findings respecting credibility where the presiding official relies expressly or by necessary implication on the demeanor of the witnesses. On appeal to this court, when a finding by the presiding official of this nature has been reversed by the board, we cannot sustain the board's decision unless the board has articulated a sound reason, based on the record, for its contrary evaluation of the testimonial evidence. The board is not free simply to disagree with the presiding official's assessment of credibility.[7] This restriction is comparable to one accepted by one of our predecessor courts in holding that great deference must be granted to the trier of fact who has had the opportunity to observe the demeanor of the witnesses, whereas the reviewing body looks only at "cold records." *Dittmore-Freimuth Corp. v. United States,* 390 F.2d 664, 685, 182 Ct.Cl. 507 (1968). *See also Seger v. United States,* 469 F.2d 292, 309, 199 Ct.Cl. 766 (1972) ("The board's determination is not to be overruled unless it is found that testimony by the witnesses is discredited by undisputed evidence or by fact."). At the same time, it does not unduly impinge upon the board's ability to review findings of a presiding official. Rather, it simply recognizes the reality that the conduct of a witness while testifying may fairly detract from the written word.

---

7. That this result appears necessary under *Universal Camera* has already been recognized by the MSPB. In *Weaver,* 2 MSPB at 298–99, 2 M.S.P.R. at 132–33, the board stated:

> [T]he Board must depend heavily upon the presiding official's assessment of witness credibility, at least when there are not other, perhaps more persuasive, indicia of credibility included in the record. For this reason, when

questions of credibility are presented, due deference must necessarily be given to the assessment of the presiding official who was present to hear and observe the demeanor of the witnesses. *Universal Camera, supra,* 340 U.S. at 496, 71 S.Ct. at 468.

*See also Connolly, supra,* at 1330 (deference required to credibility determinations).

*See, e.g., NLRB v. Walton Manufacturing Co.,* 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962); *Universal Camera,* 340 U.S. at 496, 71 S.Ct. at 468.

Applying these principles to the present case, the issue before this court becomes whether or not the board's evaluation of the weight of the evidence is reasonable (i.e., supported by substantial evidence) taking into consideration that the presiding official, who heard the witnesses, had evaluated the agency's evidence as insufficient to meet the preponderance of evidence standard.

As an initial matter, it must be noted that the presiding official made no determination that Ms. LaSalle's and Mr. Kester's testimony respecting Incident A (the kiss at the basement telephone) was not credible because of their demeanor. Rather, the testimony was rejected expressly on the basis of the content of their testimony. In reviewing that testimony, the board discounted the importance of their recollection as to the precise date and time that the incident occurred. Ordinarily, we would find the reasons articulated by the board entirely reasonable as a basis for reversing a credibility determination. The testimony of Ms. LaSalle and Mr. Kester was consistent in the important matter—that the incident occurred. Had Mr. Jackson not testified, we would have no difficulty affirming the board. However, the board gave no reason for rejecting Mr. Jackson's testimony while the presiding official favorably commented on his demeanor.

■ Under these circumstances, we cannot agree that a reasonable fact-finder would accept the agency's proof as sufficient to establish by a preponderance of the evidence, i.e., as more likely than not, that the incident occurred, apart from a credibility determination based on demeanor. Mr. Kester had no knowledge of what actually happened except what Ms. LaSalle told him. In our view, such testimony does not raise the agency's entire evidence to the level of a preponderance considering the entirety of the record. In essence, there is only Ms. LaSalle vis-a-vis Mr. Jackson and

no basis for the board to choose between them. Having rejected the presiding official's *rationale* on credibility, the matter could have been remanded for a redetermination. However that may be, it was not, and we are faced, in effect, with conflicting determinations concerning credibility. On that matter, the presiding official is without question the better judge of who to believe. Thus, with respect to the decision by the board on incident A, we conclude that substantial evidence does not support the board's decision.

■ With respect to incident D, requests for kisses from Ms. LaSalle, we hold that the board reasonably found that the agency established the facts by a preponderance of the evidence. This incident—in contrast to incident A—was the subject of direct testimony by another witness to the events, Ms. Herring. The analysis by the presiding official failed to take her testimony into account. The presiding official did not discredit it, but ignored it. Contrary to petitioner's argument, the board did not simply overturn the presiding official's credibility determination. Rather, the board's weighing of the evidence of record was more complete. Thus, we hold that the board's holding that the preponderance of the evidence supports this basis for the charge against petitioner is reasonable or, in the terms of the statute, is "supported by substantial evidence."

### Penalty

■ Since only one of five incidents has been established, and that one involving no actual physical contact, or *quid pro quo,* the penalty of removal would be excessive on that basis alone. Moreover, the past disciplinary actions taken against Mr. Jackson, on which the board relied, appear to have been minor and wholly unrelated to sexual harassment. (*See* note 2, *supra.*) Thus, we do not believe that, as a factor affecting the magnitude of the penalty, his past record is a substantial consideration.

As a supervisor, Mr. Jackson was responsible for the environment of the workplace,

and clearly he did not live up to those responsibilities. However, it does not appear that he could not perform satisfactorily in a non-supervisory position. Moreover, from the testimony of others, it appears that Mr. Jackson's behavior was uneven with respect to his treatment of female subordinates and that he may be the type of person who could well benefit from counselling.

Under these circumstances, the penalty of removal is vacated and the case is remanded to the board for determination of a lesser penalty.

Each party shall bear their own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART AND REMANDED.