884 F.2d 1399
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Anthony GLEAVES, Petitioner,
v.
DEPARTMENT OF the NAVY, Respondent.
 No. 89-3108.
 United States Court of Appeals, Federal Circuit.
 Aug. 24, 1989.
Rehearing Denied Sept. 19, 1989.
Suggestion for Rehearing In Banc Declined Sept. 30, 1989.
 
 Before MARKEY, Chief Judge, and PAULINE NEWMAN and BISSELL, Circuit Judges.
 MARKEY, Chief Judge.
 
 DECISION
 
 1
 Anthony Gleaves (Gleaves) appeals from the Merit System Protection Board's (board's) decision, docket no. PH07528710639-1, dismissing his appeal as untimely filed. We affirm.
 
 OPINION
 
 2
 Board regulations require filing an appeal within 20 days of the effective date of the action being appealed. 5 C.F.R. Sec. 1201.22(b) (1988). Gleaves filed his appeal on September 14, 1987, more than 20 days after his October 23, 1986 resignation.
 
 
 3
 An untimely appeal may be accepted by the board if good cause for waiver of the 20 day time limit is established. 5 C.F.R. Sec. 1201.22(c). Gleaves discovered the coding on his SF-50 in late fall 1986, but waited about five months, i.e., until April 1987, to contact an attorney. Thereafter, Gleaves' attorney corresponded about the matter with the Navy for some additional five months before filing his appeal. In these circumstances, we cannot say that the board's denial of Gleaves' request for a waiver of the timeliness requirement was arbitrary, an abuse of discretion, or otherwise not in accordance with law. See Phillips v. United States Postal Serv., 695 F.2d 1389, 1390 (Fed.Cir.1982).
 
 
 4
 PAULINE NEWMAN, Circuit Judge, dissenting.
 
 
 5
 I respectfully dissent.
 
 
 6
 The Board's decision turned on its determination that there had been no agreement or understanding that Mr. Gleaves would resign and the Navy would provide him with a "clean record"; from which the Board reasoned that since there was no agreement or understanding it could not have been breached; and since there was no breach there was no basis for measuring the time for appeal from the date of asserted breach. Although 5 C.F.R. Sec. 1201.22(c) authorizes waiver of the time limit on good cause shown, The Board concluded that the time limit for filing was appropriately measured from the date of Gleaves' resignation, that waiver was not justified, and that the appeal was not timely filed. The case was dismissed for untimeliness of filing, and for lack of jurisdiction based on the absence of an agreement with the agency which would show that Gleaves' resignation was other that "voluntary".
 
 
 7
 The question of timeliness depends on whether there was an agreement or understanding that was breached or repudiated at some time after Gleaves resignation, whereby no cause of action would have accrued until the time of breach. This in turn depends on whether there was an agreement or understanding as to the conditions of his resignation. The merits of the determination of whether a separation was involuntary is "inextricably intertwined" with the Board's jurisdiction. Schultz v. United States Navy, 810 F.2d 1133, 1136 (Fed.Cir.1987).
 
 
 8
 * After the Navy informed Mr. Gleaves that he would be removed for inadequate performance, he and his representative Mr. Di Dio, a professional personnel advisor, met with Commander Moeller and a Navy personnel officer. Mr. Gleaves states that it was agreed that he would resign and the Navy would provide him with a "clean record". Mr. Gleaves resigned. The Navy states, however, that it never agreed to provide a clean record.
 
 
 9
 Mr. Gleaves and Mr. Di Dio testified that Commander Moeller had agreed that Mr. Gleaves would be given a clean record; Commander Moeller and the personnel officer testified to the contrary. Although credibility determinations are virtually unreviewable on appeal from Board decisions, Griessenauer v. Department of Energy, 754 F.2d 361, 364 (Fed.Cir.1985), conflicting oral testimony is not insulated from the weight of documentary and other evidence, including the actual behavior of the parties. All probative evidence must be considered. Jackson v. Veterans Administration, 768 F.2d 1325, 1330 (Fed.Cir.1985) (substantial evidence determination is made on consideration of the record as a whole).
 
 
 10
 The factual background, as summarized by the Administrative Judge, is not in dispute, although the conclusions drawn therefrom are the basis for this action. The highlights supporting Mr. Gleaves' position are: when Mr. Gleaves discovered shortly after his resignation that the SF-50 in his personnel file carried the words "proposal to separate for unacceptable performance", and pointed this out to Commander Moeller, the Navy "cancelled" this SF-50 and replaced it with a substitute SF-50, stating on the later form "reason for cancellation: to remove inappropriate remark". Later, when Mr. Gleaves learned from potential employers that his record was still not "clean", his attorney Mr. White wrote to Commander Moeller, his letter including the following statement::
 
 
 11
 I understand from [Gleaves and Di Dio] that an agreement was reached between you and Mr. Gleaves whereby Mr. Gleaves would resign from the activity and, in consideration of such resignation, all documentation concerning his proposed removal would be removed from this Official Personnel File.
 
 
 12
 Attorney White in this letter identified four specific documents that he requested be removed from the personnel file, all related to Gleaves' removal for unacceptable performance. The documents so identified were the Notice of Proposed Removal, The Decision on Notice of Proposed Removal, the SF-50 dated 10/10/86, and the SF-50 dated 10/29/96. Mr. White stated "I, of course, have a copy of the SF-50 dated 11/07/86 which reflects that Mr. Gleaves resigned to 'accept another position with greater opportunities.' " Moeller in reply wrote that:
 
 
 13
 In response to your June 30 letter ... I had my personnel department review his official personnel file (OPF). None of the documents you were concerned about were contained in his file. They were removed at the time of my original agreement with Mr. Gleaves, and the only pertinent document that remains is his resignation SF-50, dated 11/07/86.
 
 
 14
 Commander Moeller did not disagree with attorney White's description of the "original agreement". This letter from Commander Moeller is consistent with a letter that Mr. Di Dio had written to attorney White, stating that "All his official paperwork would be changed to reflect this agreement". Mr. Di Dio referred in this letter to the Navy's acceptance of the changed SF-50 that stated that the purpose of Gleaves' resignation was "To accept another position with greater opportunities."
 
 
 15
 Following this exchange of correspondence, Gleaves through attorney White objected that the SF-50 in the file contained two coded designations: the code "312" and the initials "ILIA". It seems that all government personnel officers know that this code number and "ILIA" mean "in lieu of involuntary action". Some five weeks later White's request for deletion of these codes was refused, in a letter wherein Commander Moeller wrote in explanation that Gleaves "was further told that if he chose this course of action [resignation], there would be no removal action on his record. We never agreed that if he resigned all references to the pending removal would be removed from his records." Thus the Navy denied, for the first time, that it had agreed to provide a "clean record". Commander Moeller appears to be drawing a fine line in the two quoted sentences. Further, this letter is inconsistent with Moeller's earlier letter, which is unqualified in its reference to "my original agreement with Mr. Gleaves."
 
 
 16
 The Administrative Judge, holding that there was no agreement, makes no mention of Moeller's reference to "my original agreement". No plausible explanation is offered of why Commander Moeller assured Gleaves' counsel that "at the time of my original agreement" the objectionable documents were removed, if there were no agreement.
 
 
 17
 It is uncontroverted that these official agency records were removed. The removal of these records is understandable only if there were an agreement to do so--as Commander Moeller wrote. These words and actions support the testimony of Gleaves and Di Dio, and conflict with Commander Moeller's later retrenchment. See Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985) ("Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible that a fact-finder would not credit it. Where such factors are present, the court of appeals may well find clear error in a finding purportedly based on a credibility determination.")
 
 
 18
 In sum, the Navy's actions at the time of and shortly after Gleaves' resignation, and the contemporaneous documentary evidence, are consistent with Gleaves' position and inconsistent with the Navy's position. Applying the applicable standard of review, I do not discern substantial evidence supporting the Board's finding that there was no agreement to provide a clean record. 5 U.S.C. Sec. 7703(c) (1982); Kumferman v. Department of the Navy, 785 F.2d 286, 290 (Fed.Cir.1986); Phillips v. United States Postal Service, 695 F.2d 1389, 1390 (Fed.Cir.1982).
 
 
 19
 Thus I conclude that such an agreement had been made and, after apparent initial compliance, was repudiated and breached by the agency.
 
 B
 
 20
 During the period that the Navy appeared to be complying with its agreement, Gleaves had no cause for legal action, and no basis for taking an appeal to the MSPB. Although the majority observes that Gleaves was required to bring suit within 20 days after his resignation, at that time there was no action of which Gleaves could have complained. The agency initially performed, or told Gleaves that it was performing, in accordance with the agreement referred to by Commander Moeller. Gleaves had no reason to expect repudiation at some time in the future. Not until the Navy's written denial, dated August 27, 1987, was there a basis for seeking remedial action. Gleaves filed this appeal on September 14, 1987.
 
 
 21
 The administrative judge refused to waive the 20-day filing requirement measured by the date of his resignation, 5 C.F.R. Sec. 1201.22(b), on the ground that Gleaves had not "shown that his resignation action was the product of deception." Deception by the agency is not the only basis for waiver, as is well established. Waiver of the time for appeal of an adverse action is authorized for good cause. 5 C.F.R. Secs. 1201.22(c)(1) and (2). Indeed, as stated in Shiflett v. United States Postal Service, 839 F.2d 669, 672 (Fed.Cir.1988), the question is not whether there has been shown good cause for waiver, but whether there has been shown "good cause for the untimely filing".
 
 
 22
 Mr. Gleaves acted reasonably after it became apparent that the Navy was refusing to fulfill its agreement. He retained counsel, and received false reassurances from the agency, eventually followed by a written repudiation. In my view, good cause was shown for the time of filing the appeal to the Board. I would reverse the Board's holding of untimeliness.
 
 C
 
 23
 The Board held in Carter v. Department of the Navy, 6 MSPR 95, 97 n. 1, 6 MSPB 92, 93 n. 1 (1981), that
 
 
 24
 no statute or regulation forbids an agency from settling a disputed personnel matter by agreeing to omit adverse notations in the personnel record of an employee who, in consideration of such agreement, elects to resign rather than face removal procedures. If an agency so agrees, and then fails to comply with the express condition on which it obtained the employee's reciprocal agreement to resign, it cannot reasonably expect the employee to be held to his or her end of the bargain.
 
 
 25
 The soundness of the policy underlying such agreements has not been challenged by the government. When such an agreement is reached with an employee, there is an obligation on the agency to comply. Federal Power Comm'n v. Tuscarora Indian Nation, 362 U.S. 99, 124 (1960) ("agreements are made to be performed--no less by the Government than by others").
 
 
 26
 Gleaves performed his part, relieving the government of the procedures appertaining to removal by adverse action. "By its nature a voluntary action does not implicate the procedures and rights of an employee associated with an adverse action." Schultz v. United States Navy, 810 F.2d at 1136. An ostensibly voluntary resignation is deemed involuntary when based on agency impropriety or misinformation. See, e.g., Covington v. Department of Health and Human Services, 750 F.2d 937, 943 (Fed.Cir.1984). If a resignation is thereby deemed involuntary, "the board not only has jurisdiction, but also the employee wins on the merits and is entitled to reinstatement." Schultz, supra. Accord, Carter, supra.
 
 
 27
 I would reverse the decision of the Board that it is without jurisdiction, and remand the case for determination by the Board of appropriate relief.