NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3289

CANDACE N. MCBETH,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

Ethel L. Munson, Law Office of Ethel L. Munson, of Atlanta, Georgia, argued for petitioner.

Sean B. McNamara, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, and Deborah A. Bynum, Assistant Director. Of counsel on the brief were James M. Flournoy, and Steven A. Collins, Assistant Regional Counsel, Office of the General Counsel, Region IV, Social Security Administration, of Atlanta, Georgia.

Appealed From: United States Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3289

CANDACE N. MCBETH,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

_____

DECIDED: July 17, 2007

_____

Before MICHEL, <u>Chief Judge</u>, GAJARSA, <u>Circuit Judge</u>, and ROBINSON,[*] <u>District Judge</u>.

MICHEL, <u>Chief Judge</u>.

Candace N. McBeth petitions for review of the final decision, on April 24, 2006, of the Merit Systems Protection Board ("Board") in AT-0752-06-0142-I-1 sustaining her removal by the Social Security Administration ("SSA") from the position of Claims Representative. Because there are no contested issues of law or procedure, substantial evidence supports all four charges of misconduct, and removal was reasonable under the circumstances, we <u>affirm</u>.

---

[*]   Honorable Sue Robinson, District Judge, United States District Court for the District of Delaware, sitting by designation.

## I.    BACKGROUND

The SSA first employed McBeth as a Service Representative in Louisiana in 1997.  On April 17, 2002, however, McBeth was suspended for two days for unprofessional and inappropriate conduct, unauthorized search of a supervisor's desk, failure to follow an office procedure, and unauthorized removal of signed documents from a claims file.  On April 30, 2002, the SSA proposed to suspend McBeth for fourteen days for failure to follow management instructions, failure to follow office procedures, and inappropriate service to the public.  McBeth resigned from the SSA before serving the suspension.

In 2004, McBeth was rehired in a Georgia SSA office as a Claims Representative under a temporary appointment that eventually became permanent.  On August 19, 2005, Elaine Press (McBeth's first-level supervisor) sent her a proposed notice of removal containing the following four charges: (1) discourtesy to a fellow SSA employee; (2) demonstration of a lack of impartiality while performing official duties; (3) failure to follow supervisory directives; and (4) discourtesy to a member of the public.  Letter from Elaine Press, Assistant District Manager, to Candace McBeth (Aug. 19, 2005) ("Proposal Letter").

### A.    Discourtesy to a Fellow SSA employee and Lack of Impartiality

These two charges can be analyzed together because they both arise from events on the same day.  On May 16, 2005, McBeth called Paul Stephens, a senior SSA attorney with the Office of Hearings and Appeals ("OHA") at the Atlanta North Hearing Office, to get information on the status of a five-year old claim filed by Georgina Heard.  Ms. Heard had come to see McBeth regarding her outstanding claim.  Stephens

2006-3289                                                2

explained that OHA was in the process of reconstructing Ms. Heard's file because it had been lost during her appeal of the denial of her social security benefits.[1] In the presence of Ms. Heard, McBeth (1) told Stephens that based on her review of the medical evidence, Ms. Heard's claim should be approved, (2) demanded to know why approval of Ms. Heard's claim was taking so long, and (3) criticized Stephens and the Administrative Law Judge for not doing their jobs. Stephens characterized McBeth's tone as strident and hostile. On the same day, McBeth called Michael Gay, aide to Senator Johnny Isakson and former aide to Senator Zell Miller, describing the claimant as suicidal and in dire need of her benefits.[2] Mr. Gay, in turn, called Stephens, who marked the case as having Congressional interest.

## B. Failure to Follow Directives

There are three specifications for the charge that McBeth failed to follow supervisory directives. First, on June 7, 2005, Shara Johnson, one of McBeth's supervisors, assigned McBeth an End-Stage Renal Disease ("ESRD") claim to process for a claimant who was in dire need of reimbursement so she could start dialysis. After receiving a guideline for processing the claim and despite repeated orders by various supervisors, McBeth failed to process the ESRD claim over the course of several weeks.

---

[1] After an unfavorable decision on her benefits claim in 2003, Ms. Heard filed a request for review with the Appeals Council. When her file was lost on the way to the Appeals Council, the Council remanded the case with instructions for OHA to reconstruct the file and hold a new hearing.

[2] Apparently, Ms. Heard told McBeth that Mr. Gay would have information about her from when he worked as an aide for Senator Zell Miller. See McBeth v. Soc. Sec. Admin., No. AT-0752-06-0142-I-1, slip op. at 4 n.2 (M.S.P.B. Mar. 20, 2006). Mr. Gay did not have any information on file concerning Ms. Heard.

Second, on July 28, 2005, Press and Janice Hutchinson (Operations Supervisor) encountered McBeth in a private interviewing room checking electronic mail and asked her to return to her work station. McBeth asked for a union representative, pulled a tape recorder out of her brassiere, and started recording. The supervisors asked McBeth to put away the recorder, but McBeth kept recording.

Third, on August 8, 2005, Press, Union Representative Paul Coffey, and McBeth met to discuss the July 28, 2005 incident and a proposal to suspend her. McBeth sought permission to record the meeting. Press gave McBeth a written directive instructing her not to bring a recording device to work. Press instructed McBeth not to record the discussion and instead to put the recording device in her vehicle. McBeth complied with this directive.

### C.    Discourtesy to a member of the public

On July 7, 2005, Tim Autrey, a member of the public, inquired at the reception desk about bathroom access after discovering that the men's restroom was inoperable and the women's restroom was locked. Mr. Autrey reported that a SSA employee at the reception desk (not the security guard) told him to "go in his pants." At the time of the incident, McBeth and Olivia Brown, the security guard, were the only two people at the reception desk. Mr. Autrey verbally complained about the incident to the Atlanta SSA office, to Press, and to Gary Epling (McBeth's second-level supervisor). Mr. Autrey followed up his conversation with Epling with an unsigned, misdated letter[3] that summarized the incident.

---

[3]    The Autrey Letter was dated July 19, 2004, instead of 2005.

Returning to the history of the ensuing removal, on September 1, 2005, McBeth responded to the Proposal Letter. On October 21, 2005, Epling issued a letter effecting McBeth's immediate removal from her position as a Claims Representative. Letter from Gary Epling, District Manager, to Candace McBeth (Oct. 21, 2005) ("Removal Letter"). McBeth filed a timely appeal to the Board on November 21, 2005. An Administrative Judge ("AJ") conducted a hearing on February 7, 2006, and in an Initial Decision dated March 20, 2006, sustained McBeth's removal. McBeth v. Soc. Sec. Admin., No. AT-0752-06-0142-I-1, slip op. (M.S.P.B. Mar. 20, 2006) ("Initial Decision"). The Initial Decision became final on April 24, 2006, when McBeth failed to file a petition for full Board review. This timely appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(9) because there was a final Board decision.

## II. DISCUSSION

Our review of MSPB decisions is limited by statute. In this case, we must affirm the Board's decision unless it is unsupported by substantial evidence. 5 U.S.C § 7703(c); see also Chase-Baker v. Dep't of Justice, 198 F.3d 843, 845 (Fed. Cir. 1999) (citing 5 U.S.C. § 7703(c)). On appeal, McBeth argues that the AJ's findings with respect to the four charges and penalty are not supported by substantial evidence.

### A. Proof of Misconduct

The AJ found that the SSA had proven the charges of discourtesy to a fellow SSA employee and demonstration of a lack of impartiality while performing official duties by preponderant evidence. He based this finding on the testimony of Stephens, who characterized his conversation with McBeth as the "worse experience he had ever had with a federal employee during his approximately 25 years of service," on a

contemporaneous memorandum Stephens had written to his supervisor summarizing his conversation with McBeth, and on Stephens' testimony that McBeth stated that if she were the decision-maker, she would approve Ms. Heard's claim. The AJ found Stephens' testimony to be more credible than McBeth's.

On appeal, McBeth contends that under Jackson v. Veterans Admin., 768 F.2d 1325, 1331-32 (Fed. Cir. 1985), an AJ must set forth all bases for his subsidiary findings that bear on credibility and argues that because the AJ did not give reasons why he discredited McBeth's testimony, his credibility assessment was in error. Jackson, which holds that the full Board must provide sound reasons for rejecting the credibility determination of an AJ, id. at 1331, does not support McBeth's argument. Because there was no full Board review of the AJ's Initial Decision in this case, Jackson is inapposite. Instead, Jackson affirms that we should give deference to the credibility determinations of an AJ who "was present to hear and observe the demeanor of the witnesses," id. at 1332 n.7 (internal citation omitted).

Although it would have been more helpful to this court if the AJ had discussed the Hillen factors[4] and provided specific reasons for why he credited Stephens' testimony over that of McBeth, this court accords great deference to the AJ's credibility determinations, Griessenauer v. Dep't of Energy, 754 F.2d 361, 364 (Fed. Cir. 1985), unless they are "inherently improbable or discredited by undisputed evidence or

---

[4] See Hillen v. Dep't of the Army, 35 M.S.P.R. 453, 458 (M.S.P.B. 1987) (setting forth the following factors for resolving credibility issues: "(1) [t]he witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor.").

physical fact," Hanratty v. Dep't of Transp., 819 F.2d 286, 288 (Fed. Cir. 1987) (internal citation omitted). We will not reweigh the evidence, nor will we redo the AJ's credibility determination, where, as here, there is substantial evidence to support the AJ's findings and decision sustaining these charges of misconduct.

With respect to the ESRD specification for the charge that McBeth failed to follow supervisory directives, the AJ based his finding on the testimony of McBeth's supervisors (Johnson and Press) who testified that despite receiving a step-by-step guideline, McBeth failed to process the ESRD claim. Over two weeks later, Press reassigned the claim to Kathy Pierce, who testified that she processed the claim within an hour using the same guideline McBeth had received. For the July 28, 2005 use of tape recorder specification, the AJ based his findings on the testimony of supervisors (Johnson, Press, and Hutchinson), who observed McBeth speaking into a tape recorder after Press had told McBeth to stop recording. There is therefore more than substantial evidence to support these two specifications of McBeth's failure to follow supervisory directives. However, both parties agree that it was error for the AJ to find that on August 8, 2005, McBeth violated a prior written directive she was provided on July 28, 2005, prohibiting recording devices on the premises, because McBeth did not receive the written directive on July 28, 2005. She received it on August 8, 2005. In fact, the evidence shows that when McBeth received the written directive on August 8, 2005, she put her recorder away.

That the AJ's finding regarding the August 8, 2005 incident is not supported by substantial evidence is not fatal to the decision, however, because the proven ESRD and July 28, 2005 specifications sustain the charge that McBeth failed to follow SSA's

directives. See Burroughs v. Dep't of Army, 918 F.2d 170, 172 (Fed. Cir. 1990) ("If the agency fails to prove one of the elements of its charge, then the entire charge must fall. To be contrasted is the situation where more than one event or factual specification is set out to support a single charge. In that case, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge.") (internal citation omitted).

The AJ based his finding on the charge of discourtesy to a member of the public on the testimony of Press and Epling and the Autrey letter. On appeal, McBeth dismisses the evidence as hearsay. However, there is no evidence that the person who told Mr. Autrey to urinate in his pants could have been someone other than McBeth. Mr. Autrey identified the culprit as a SSA employee at the reception desk who was not the security guard. Per Press, McBeth was the only SSA employee at the reception desk at the time of the incident. Autrey's letter summarizing the incident, albeit misdated and unsigned, corroborates Press and Epling's consistent narrations of what Autrey told them. We hold there is substantial evidence to support the charge of discourtesy to a member of the public. See Sanders v. United States Postal Serv., 801 F.2d 1328, 1331 (Fed. Cir. 1986) ("[H]earsay evidence may be substantial evidence in an administrative proceeding if there are circumstances which give it credibility and probative value to a reasonable mind.").

## B.    Reasonableness of Penalty

The AJ found that removal was well within the bounds of reasonableness based on the number and seriousness of the charges and McBeth's prior disciplinary record, namely the two-day suspension in the Louisiana SSA Office on April 17, 2002 (cited in the Removal Letter) and the proposed fourteen-day suspension (not cited in the

Removal Letter). Thus, the AJ referred to past misconduct that was not included in the Removal Letter.

However, the AJ's possible reliance on the proposed suspension is harmless error because there is substantial evidence that (1) the SSA did not rely on the proposed suspension in its Proposal Letter or Removal Letter, see Proposal Letter at 3 and Removal Letter at 5 (citing only the two-day suspension as a prior disciplinary action), and (2) McBeth responded to the Proposal Letter. Thus, the AJ's decision did not deny McBeth any substantial rights or result in harmful error. See Brewer v. United States Postal Serv., 647 F.2d 1093, 1097 (Ct. Cl. 1981). In any event, there is substantial evidence that the seriousness of the charges alone or in combination with the two-day suspension support a finding that the penalty of removal was reasonable. We will not interfere with the Board's affirmance of the SSA's discretion in choosing the penalty of removal, absent an abuse of that discretion. See Carosella v. United States Postal Serv., 816 F.2d 638, 643 (Fed. Cir. 1987) ("The Board's affirmance of the agency's choice of penalty will not be disturbed unless it is so harsh and inappropriate as to exceed the agency's discretionary authority.").