# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TONY A. KNIGHT,
Appellant,

v.

TENNESSEE VALLEY AUTHORITY,
Agency.

DOCKET NUMBER
AT-0351-15-0817-I-1

DATE: September 30, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Floyd Kilpatrick, Chattanooga, Tennessee, for the appellant.

Philip J. Pfeifer, Esquire, Knoxville, Tennessee, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1     The agency has filed a petition for review of the initial decision, which did not sustain the appellant's removal by operation of reduction-in-force (RIF) procedures. For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the initial decision insofar as it did not sustain the removal

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

action, SUSTAIN the removal action, and AFFIRM the initial decision as to the analysis of the appellant's age discrimination claim.

¶2    The appellant was one of three employees who held the position of Manager, Environment Services (MES) in the Environmental Monitoring and Analysis (EMA) group in the agency's environmental organization.[2]   Initial Appeal File (IAF), Tab 7.  In late 2013 and early 2014, the agency announced that it would conduct an agency‑wide reorganization to reduce expenditures.  *Id*.  The appellant's group was eliminated as part of the reorganization and the agency conducted a RIF to separate employees whose jobs had been eliminated.  Before the agency conducted the RIF action, both of the other employees who held the same position as the appellant vacated the position; one accepted a voluntary incentive and left the agency, and the other was selected for a vacant position in the agency.  *Id*.  The agency removed the appellant by RIF procedures.  *Id*.  The appellant appealed the agency's action, challenging the application of the RIF regulations to him.  IAF, Tab 1.  He also raised the affirmative defense of age discrimination.[3]  *Id*.

¶3    Based on the record, including the hearing testimony, the administrative judge found that the RIF was conducted for a legitimate reason but that the RIF regulations were not properly applied to the appellant.  IAF, Tab 19, Initial Decision (ID) at 4.  She found, based on reviewing the position descriptions of Manager of Environmental Field Services (MEFS) and the appellant's MES position, that the two positions were sufficiently similar that they should have been in the same competitive level.  ID at 11.  She also found that the appellant should have been placed on the retention register ahead of the

---

[2] The Tennessee Valley Authority is a quasi-Governmental organization, and does not use the General Schedule (GS) for classifying positions.  Thus, the positions at issue in this appeal are not referenced at GS levels.

[3] After his removal, the appellant filed a formal age discrimination complaint.  IAF, Tab 7.  He timely filed this appeal with the Board after the agency issued the final agency decision.

incumbent of the MEFS position, and should not have been released ahead of that employee. ID at 13. Additionally, the administrative judge found that the appellant failed to prove his affirmative defense of age discrimination. ID at 14. She ordered the agency to restore the appellant. ID at 14.

¶4     In its petition for review, the agency asserts that the administrative judge wrongly identified the competitive area and erred in finding that the MES and MEFS positions were in the same competitive level.[4] Petition for Review (PFR) File, Tab 1. The agency also asserts that the administrative judge, in defining the competitive level, erred by failing to compare the specific duties of the positions, disregarding the parties' agreed‑upon facts, testimony, pertinent position descriptions, and organizational history.[5] *Id*. The appellant has responded in opposition to the petition.[6] PFR File, Tab 5.

¶5     At the outset, we note that, when an agency conducts a RIF, a competitive area must be defined in terms of the agency's organizational units and geographical location and it must include all employees within the competitive area so defined. 5 C.F.R. § 351.402(b). The minimum competitive area is a subdivision of the agency under separate administration within the local commuting area. *Id*. Here, the parties agreed that "Environment" was the

---

[4] The administrative judge ordered interim relief. ID at 15. With its petition for review, the agency submitted a certificate of interim relief showing that it had complied with the order. PFR File, Tab 2.

[5] On September 14, 2016, after the record closed on review, the agency submitted a Motion to Consider New and Material Supplemental Authority. PFR File, Tab 7. We deny the motion and have not considered the pleading. Thereafter, on September 26, 2016, the appellant filed a reply to the agency's motion. We similarly have not considered this pleading.

[6] On review, the appellant does not challenge the administrative judge's determination that the appellant failed to establish his affirmative defense of age discrimination. We find no basis to disturb the well-reasoned findings of the administrative judge on review.

competitive area in the reorganization at issue in this appeal.[7]  IAF, Tab 5 at 3. Thus, we agree with the agency that the administrative judge wrongly identified the competitive area as "Environmental Operations."  ID at 5.  Both the MES and MEFS positions were in the Environment competitive area.  IAF, Tab 11 at 3-4.

¶6        In addition, when conducting a RIF, an agency must establish competitive levels consisting of all positions in a competitive area that are at the same grade or organizational level.  5 C.F.R. § 351.403.  Here, the MES position was in organization level III, EMA.  IAF, Tab 5 at 21, Tab 11 at 2.  The MEFS position is in organization level III, Environments Operations.  IAF, Tab 5 at 55.  Thus, although both the MES and MEFS position were in the Environment competitive area, they were not in the same organization level III.  The administrative judge misidentifying the competitive area as Environmental Operations may have influenced her to find that the MES and MEFS positions were not only in the same competitive area, but also in the same organizational level within the agency, and to find that the two positions were in the same competitive level.  As explained below, the administrative judge erred in finding that the MES and MEFS positions were in the same competitive level.

¶7        It is well established that in a RIF, an employee has a substantive right to be placed in a properly drawn competitive level.  *See Jicha v. Department of the Navy*, 65 M.S.P.R. 73, 76 (1994).  Thus, the agency bears the burden to prove by preponderant evidence that the appellant's competitive level was properly drawn. *Disney v. Department of the Navy*, 67 M.S.P.R. 563, 567 (1995).  To meet its burden, the agency must establish distinguishing features between positions in separate competitive levels that are sufficient as a matter of law to find that the

---

[7] In challenging the RIF, the appellant did not contest the competitive area.  IAF, Tab 14 at 3.  Because the appellant did not challenge the competitive area, the parties agreed that the competitive area was Environment, and nothing in the record suggests that the competitive area was not drawn in accordance with the RIF regulations. Therefore, the Board is not addressing the correctness of the competitive area in this appeal.

positions are not "similar enough in duties, qualifications requirements, pay schedules, and working conditions, so that an agency may reassign the incumbent of one position to any of the other positions in the level without undue interruption." 5 C.F.R. § 351.403(a). "Without undue interruption" means without any loss to productivity beyond that normally expected in the orientation of any new but fully qualified employee. *Disney*, 67 M.S.P.R. at 567. Position descriptions are significant evidence in determining whether positions should be in the same competitive level, but other evidence also may be relevant under the circumstances if it sheds light on the position descriptions. *See Evans v. Department of the Navy*, 64 M.S.P.R. 492, 495‑96 (1994).

¶8        In this case, the administrative judge relied primarily on a comparison of the position descriptions of the MES and MEFS positions to find that the two positions should have been placed in the same competitive level. She found that the education, work experience, certification/license requirements, and the knowledge/skills/abilities (KSAs) necessary to meet the minimum qualifications for the job are identical. ID at 10. She also found that, because the KSAs are the same for both jobs, an individual meeting the KSAs for one position would meet the KSAs for the other. She found, in addition, that the newer position of MEFS was initially given the same Job Title Code of FF0083 as the MES position, although at some point it was changed, but the agency did not explain the coding change. ID at 11. Further, she found that both the MES and MEFS position descriptions discuss responsibilities for environmental compliance, surface and ground water monitoring, quality assessment, project reporting, managing a budget of up to $1.5 million, and supervising up to 20 employees. ID at 11. Additionally, she found that the MEFS position comprises many of the same responsibilities that the MES position once held. ID at 11.

¶9        In its petition for review, the agency asserts that the two positions in question came from two organizations with different responsibilities. PFR File,

Tab 1 at 6. The agency asserts that the MES and MEFS positions differ regarding principal accountabilities and that respective incumbents could not perform successfully in all critical elements of both positions without undue interruption. *Id*. The agency argues that, contrary to the administrative judge's finding, most of the duties of the MES position migrated to a Program Manager (PM)[8] position, not to the MEFS position. The agency also asserts that the MEFS position focuses on the agency's right of ways—including regulatory and compliance responsibilities—responsibilities that were never in the MES position. *Id*. at 6-15.

¶10    The administrative judge's analysis did not compare in detail the specific duties of the MES and MEFS positions. Competitive‑level determinations involve a factual inquiry as well as comparing the position descriptions. *See Evans*, 64 M.S.P.R. at 495-96. Here, although the administrative judge allowed testimony regarding the differences between the MES and MEFS positions, she failed to determine whether it was relevant and material to understand the positions' principal accountabilities. ID at 10-11; *see Evans*, 64 M.S.P.R. at 496. We find that, under the circumstances of this case, it is necessary to weigh evidence in addition to the position descriptions to ascertain the duties and responsibilities of the MES and MEFS positions.

¶11    The Senior Human Resources Generalist (H.R. Generalist) who assigned competitive levels for a number of the positions involved in this RIF testified about her comparison of the MES and MEFS positions. Hearing Transcript (HT) at 166 (testimony of H.R. Generalist). She testified that the two positions differed because the MEFS position has responsibility for all of the transmission systems and their compliance, while the MES position did not have that

---

[8] The administrative judge found that there are sufficient differences between the appellant's MES position and the PM position to warrant placing them in separate competitive levels. ID at 9-10. The parties do not disagree with this finding and we find no basis to disturb it.

responsibility. *Id*. Also, the Director of Environmental Operations (Director) testified that the most distinguishing difference between the MES and MEFS positions is that the MEFS position is responsible for right-of-way support for the agency's transmission organization. HT at 92 (testimony of Director). He stated that the MEFS position requires technical knowledge of environmental regulations and requirements and, uniquely, that the incumbent may have to interact with landowners as the agency puts easements on landowners' property. *Id*. Further, he stated that the MEFS position handles endangered species concerns and potential archeological sites that are crossed by the agency's right of ways. HT at 93 (testimony of Director).

¶12     The appellant alleged that he performed the MEFS position duties at some time prior to holding the MES position. *Id*. However, that the appellant may have performed such duties in a different position within the agency prior to the RIF is irrelevant to a determination of whether—based on comparing the duties of the MES position that he held at the time of the RIF with those of the MEFS position—he could successfully perform the principal accountabilities of the MEFS position upon entry into it without any loss of productivity beyond that normally expected in the orientation of any new but fully qualified employee.[9] *See Disney*, 67 M.S.P.R. at 567.

¶13     We credit both the testimony of the H.R. Generalist and the Director that the MES and MEFS positions differed in their fundamental responsibilities. Neither witness made prior inconsistent statements, had any apparent bias, and their testimony is not contradicted by other evidence. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). While we would be reluctant to overturn a finding by the administrative judge that these witnesses were not credible if that finding were based on witness demeanor, *see Jackson v. Veterans*

---

[9] Assignment rights, i.e., whether the appellant had a right to bump or retreat into another position in lieu of his RIF separation, are not at issue in this appeal. *See* 5 C.F.R. § 351.701(b).

*Administration*, [768 F.2d 1325](), 1331 (Fed. Cir. 1985) (finding that special deference must be given to the administrative judge's findings regarding credibility when they are based on the demeanor of witnesses), here, the administrative judge made no finding in her initial decision regarding the credibility of these witnesses.

¶14      Moreover, the record establishes that the MES and MEFS positions differ in a number of specific principal accountabilities as follows:

1. The MES position's stated purpose was to manage staff for complex and/or high profile projects, to direct project team members, and to enable completion of projects. Areas of responsibility for the MES position were described as technical project areas and the position necessarily required project reporting for its complex and/or high-profile projects. IAF, Tab 5 at 21. In contrast, the MEFS position has accountability only for remediation projects, not complex and/or high-profile projects. *Id*. at 55.

2. The MES position's accountabilities included effective use of project control disciplines, ability to respond to changes in scope, schedule, and budget, and ability to communicate about projects with senior management, *id*. at 21, none of which are required for the MEFS position. Upward contact in the MEFS position is to first‑ and second‑tier supervisors, not senior management. *Id*. at 31‑32, 55.

3. The purpose of the MES position was to serve as a matrix‑structure manager who could assemble and manage a project team from various agency business units to complete assigned and emerging projects. *Id*. at 21. The MEFS position supervises assigned environmental support staff and Environmental Operations technicians; it has no matrix duties and no mention is made of an emerging project. *Id*. at 55.

4. The MES position managed environmental engineering applications and the technical project areas included environmental engineering. *Id*. at 21. The

MEFS position shows no environmental engineering responsibility or projects. *Id*. at 55.

5. The MES position's technical project areas included environmental and energy research and development scientific support. *Id*. at 21. The MEFS position indicates no technical research, development, or scientific responsibility. *Id*. at 55.

6. Although both positions have some responsibility for surface and groundwater monitoring, these responsibilities differ between the two positions. The MES position required the incumbent to manage technicians who performed sampling and to directly oversee the routine and nonroutine testing. *Id*. at 21. These duties migrated to the PM position, which is responsible for directing technical personnel involved in testing. *Id*. at 57. The MEFS position supervises the PM position, without possessing the same expertise or performing those duties. HT at 54 (testimony of Vice President of Environment), 97 (testimony of Senior Manager of Environmental Generation and Construction (Senior Manager)).

7. A principal accountability of the MES position was to coordinate with Generation Level organizations and plant management on issues related to projects and agency operations. IAF, Tab 5 at 21. The MEFS position has no accountability about coordination or work at power plants or with plant management. The MEFS position's chief technical program area is environmental compliance field work and scheduling and resource planning for right of ways. *Id*. at 55.

8. The MES position had no responsibility for right of ways. *Id*. at 21. One of the MEFS position's main purposes and responsibilities is for right of ways. *Id*. at 55.

9. The MES position did not develop or implement an environmental compliance program for, among other things, right of ways. The

MEFS position is accountable to manage environmental programs and resources to meet operational compliance and its primary program area is the agency's right of ways. An incumbent of the MEFS program develops, implements, and maintains standardized environmental compliance programs. *Id.*

10. The MES position was not responsible for controlling or monitoring stormwater or erosion. The MEFS position has to keep right of ways clear of obstructions and is responsible for stormwater inspections and monitoring to control erosion and sedimentation along the agency's right of ways. *Id.*

11. The MES position reflected no ongoing regulatory relationship or any obligation to implement the complex regulations along the agency's right of ways. *Id.* at 21. The MEFS position implements new environmental regulations in connection with the transmission system program area, and maintains working relationships with the Environmental Protection Agency as implemented by state permitting agencies in a number of states and the U.S. Army Corps of Engineers, the Fish and Wildlife Service, and State Historic Preservation Officers. HT at 92-94 (testimony of Senior Manager); 130‑31 (testimony of Manager).

12. The MES position had no responsibility for public relationships, or to resolve problems or conflicts with private landowners. IAF, Tab 5 at 21. The MEFS position has responsibility to promote public working relationships and to conduct environmental operations to resolve problems and conflicts along the private lands crossed by the agency's right of ways. HT at 92-93 (testimony of Senior Manager).

¶15    An agency is permitted to establish separate competitive levels, even for positions with the same grade and title, to take into account special qualifications or duties required of some incumbents. *See, e.g.*, *Griffin v. Department of the Navy*, 64 M.S.P.R. 561, 562‑65 (1994) (finding that an agency improperly

determined the appellant's competitive level; the appellant was serving in a temporary position as a nonnuclear pipefitter when the agency separated pipefitters into two separate competitive levels, depending on whether the pipefitters performed nuclear or nonnuclear pipefitting duties).   Here, the MES and MEFS positions each had special duties that the administrative judge failed to consider in determining that the positions were in the same competitive level, as shown by the testimony of the H.R. Generalist and the Director who had oversight responsibility for the MEFS position, IAF, Tab 5 at 31‑32, and by comparing the principal accountabilities of the MES and MEFS positions.

¶16      We find that the MES and MEFS positions did not share sufficiently similar duties and responsibilities to be placed properly in the same competitive level. Placing the MES and MEFS positions in separate competitive levels is supported particularly by the agency's showing that the two jobs applied different regulations. *See Marcinowsky v. General Services Administration*, 35 M.S.P.R. 6, 10 (1987) (determining that, although two positions had certain supervisory and management skills in common, they required a different subject matter and technical expertise that could not be acquired without undue disruption).   As a result, we find the agency showed by preponderant evidence that it could not reassign the incumbent of the MES position to the MEFS position without undue interruption. *See Anderson v. Tennessee Valley Authority*, 77 M.S.P.R. 271, 276 (1998).   Accordingly, we reverse the administrative judge's findings in this regard and we sustain the removal action.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).   You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  Title 5 of the United States Code, section 7702(b)(1)  (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color,

religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                 _____
                                         Jennifer Everling
                                         Acting Clerk of the Board

Washington, D.C.